UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. 08-50047 |
| | ) | |
| Plaintiff, | ) | |
| | ) | REPORT AND |
| vs. | ) | RECOMMENDATION ON |
| | ) | DEFENDANT'S MOTION TO |
| KENT HAZELRIGG, | ) | SUPPRESS [DOCKET 37] |
| | ) | |
| Defendant. | ) | |

## INTRODUCTION

This matter is before the court pursuant to an indictment charging

defendant Kent Hazelrigg with one count of conspiracy to distribute a

controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and

846, and one count of possession with intent to distribute a controlled

substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). [Docket 1].

Mr. Hazelrigg moves the court to suppress statements made to law enforcement

agents and evidence seized as a result of a search of his person, residence, and

vehicle on November 20, 2007, pursuant to a search warrant. [Docket 37]. In

support of his suppression motion, Mr. Hazelrigg argues that the search

warrant was invalid and defective and, thus, all of the fruits of the search

should be suppressed. Id. Mr. Hazelrigg's motion to suppress was referred to

this magistrate judge for a report and recommendation to the district court

pursuant to Chief Judge Karen E. Schreier's standing order dated June 11, 2007, and 28 U.S.C. § 636(b)(1)(B).

## FACTS

An evidentiary hearing on Mr. Hazelrigg's motion was held on Monday, February 2, 2002. Mr. Hazelrigg and his attorney, Terry Pechota, were present as was the attorney for the government, Assistant United States Attorney Mark Vargo. The only witness who testified at the hearing was Special Agent Lyle Tolsma of the South Dakota Division of Criminal Investigation (hereafter "DCI"). Both parties stipulated to the admission of the following exhibits: (1) Exhibit 1, a transcript of a recorded conversation between Steve Oliver and Kent Hazelrigg; (2) Exhibit 2, Agent Tolsma's affidavit in support of his request for a search warrant; (3) Exhibit 3, the search warrant issued on Agent Tolsma's affidavit; (4) Exhibit 4, a verified inventory and return showing what was seized upon execution of the search warrant; (5) Exhibit 5, an investigative report dated January 8, 2008; and (6) Exhibit 6, a digital recording of the conversation from which exhibit 1 was prepared.[1] From the testimony and exhibits admitted at the hearing, the court finds the following facts.

Agent Tolsma has been an investigator with the DCI for approximately seven years. Among his duties are investigating allegations regarding drug

---

[1]Exhibits 1-5 were attached to Mr. Hazelrigg's memorandum in support of his motion to suppress at Docket No. 37. Duplicates of exhibits 1-5 were not provided at the hearing.

trafficking in the south-western quadrant of South Dakota. Prior to becoming a DCI agent, Agent Tolsma was a patrol officer with the South Dakota Highway Patrol for approximately 8 years.

For a period of approximately 2 years, Agent Tolsma has been working with a source of information ("SOI") who gives Agent Tolsma information about drug trafficking. The SOI is someone whose identify is known to Agent Tolsma. Agent Tolsma has had approximately 12 face-to-face meetings with the SOI. Information from the SOI has been confirmed by Agent Tolsma and has resulted in numerous successful prosecutions.

Approximately one week to 10 days prior to the issuance of the search warrant in this case, Agent Tolsma had contact with the SOI. The SOI reported personally observing Mr. Hazelrigg receive large quantities of controlled substances, including "pink" and "white" methamphetamine. The SOI reported seeing scales in Mr. Hazelrigg's possession. The SOI also reported personally observing Mr. Hazelrigg use controlled substances. The SOI reported that Mr. Hazelrigg lived in a camper trailer on a fenced-in lot adjacent to property owned by the South Dakota Department of Transportation on Dyess Avenue in Rapid City.

On approximately October 22, 2007, a man by the name of Steve Oliver was arrested for attempting to steal a tripod from a building supply store called "Menard's" which is located on Eglin Street in Rapid City, South Dakota.

Menard's is proximate to the location of Mr. Hazelrigg's residence on Dyess Avenue. At the time of his arrest, Oliver's vehicle was found to have a film cannister in it that had a white powder residue that tested positive for methamphetamine. At the time of his arrest for this attempted theft, Oliver was on parole for a grand theft conviction. He was placed in the Pennington County Jail. A urinalysis of Oliver proved clean, showing no contraband drugs in his system. On November 13, 2007, Oliver sent word through the jail corrections staff that he wanted to speak to law enforcement about the methamphetamine found in his possession.

Agent Tolsma, along with Agent Gobel, another DCI agent, went to the jail on November 13 to speak to Oliver. Agent Tolsma had never had any contact with Oliver prior to this date. As far as Agent Tolsma knew, the SOI and Oliver had no knowledge of each other. Prior to meeting with Oliver, Tolsma ascertained that Oliver was currently on parole for grand theft.

At the jail, Oliver told Agents Toslma and Goble that he and Mr. Hazelrigg were working on a house together. Oliver reported that Mr. Hazelrigg went to the Rapid City Police Department to apply for a permit to move the house. Prior to making this trip, Mr. Hazelrigg asked Oliver to hold certain items for him: a wooden "dug-out" that contained a "one-hitter" in it,[2] a jeweler's bag containing white powder residue, and the film cannister found

---

[2]Agent Tolsma explained that the "one-hitter" was a device for holding and smoking a very small amount of marijuana.

4

in Oliver's vehicle at the time of his arrest.  Oliver told Agent Tolsma that

Mr. Hazelrigg had later retrieved all of these items from Oliver's vehicle except

the film cannister.

Agent Tolsma asked Oliver to engage in a recorded phone call to

Mr. Hazelrigg, to which Oliver agreed.  The call took place on November 19,

2007, at approximately 10:50 a.m.  A transcript of this call was entered into

evidence as Exhibit 1; the digital recording of the conversation is Exhibit 6.

Pertinent to the issues raised by Mr. Hazelrigg in his motion to suppress is the

following exchange:

> Kent: Hello
> Oliver: Hey.  What are you doing?
> K:      Not much.  What are you doing?
> O:      Just got out of . . .
> K:      Out of the pokey.
> O:      Yeah.
> K:      About time.  Huh.  They didn't send you back?
> O:      No, they f–kin took a piss test and I came back clean and they made me sit 10 days for the tripod and sh_t . . . Hey what's going on up there at the job site you know?
> K:      Um no, I was by there about a week ago and Donny was just going to get a lawyer to see what he could do to get you out.
> O:      Who was?
> K:      Don.
> O:      John was?
> K:      Don.
> O:      Oh.
> K:      Is that his name?
> O:      John, Rob.
> K:      What's the dude with the beard?
> O:      That's John.
> K:      Ok, John then.
> O:      Oh well sh_t . . . then how the hell was he going to do that on a parol hold?

K: I don't know, but he was trying.

O; Yeah, no . . . . You know that day you went to get the ... well you went to see the cops or whatever the f__k it was, about the building permit and had me hold that shit?

K: Yep...yeah.

O: Well they f__king, found that stupid film cannister you know and tested it . . . but so. So the PO's had me held for 10 days. I got to go see them today sometime, Dad's going to take me up there. I was kinda wondering what the f__k was going on up there ...

* * * *

K: He's the one that told me you got thrown in the pokey.

O: Yeah. . . Well it was that stupid film container.

K: Well I don't know about that but . . .

O: You put me kinda in a tough spot.

K: huh?

O: You put me kinda in a tough spot, I was scared.

K: Was it Coke?

O: Well I don't know. . . what . . . they said . . . they didn't say and they let me out, and my piss was clean so. . .

K: Well, stay that way.

<u>See</u> Exhibit 1.

In addition to the information detailed above, Agent Tolsma testified that he had the following additional information about Mr. Hazelrigg's connection to drugs. In either 1995 or 1996, when Tolsma was a highway patrol officer, he stopped Mr. Hazelrigg for speeding near Kadoka, South Dakota, and found Mr. Hazelrigg to be in possession of a small amount of marijuana. Also, sometime between 1996 and 2003, Agent Tolsma stopped Mr. Hazelrigg for speeding on a motorcycle and arrested him for driving while under the influence. In addition, Agent Tolsma testified that Mr. Hazelrigg's name had

come up several times when other individuals were "debriefing" with the DCI–that is, telling the DCI information known to them about drug trafficking.

Following the recorded telephone conversation between Oliver and Hazelrigg, Agent Tolsma verified Mr. Hazelrigg's address by checking the computer database at the Rapid City Police Department and also by verifying the address listed by Mr. Hazelrigg when he applied for the permits to which Oliver had made reference. Agent Tolsma then swore out an affidavit and submitted the affidavit to a South Dakota circuit court judge, seeking the issuance of a search warrant. Exhibit 2 is Agent Tolsma's affidavit. Agent Tolsma could not specifically remember if the state court judge asked him any questions when he reviewed the affidavit. No information or materials were provided to the state court judge other than Agent Tolsma's affidavit. The judge issued the search warrant, which is Exhibit 3.

Agent Tolsma's affidavit lists Mr. Hazelrigg's address as 1311 Dyess Avenue and lists a 1997 red Ford F150 pickup with South Dakota license plates as belonging to Mr. Hazelrigg. The affidavit seeks a no-knock, night-time warrant or, in the alternative, execution of the warrant during the daytime. The affidavit recites Agent Tolsma's experience as a law enforcement officer, including a recitation that he was a canine drug dog handler while employed as a highway patrolman. The affidavit then sets forth the substance of Tolsma's interview with Oliver at the jail and the recorded telephone call between Oliver

7

and Mr. Hazelrigg. Agent Tolsma included this verbatim transcript from that conversation:

> Oliver: "you had me hold that shit."
> Hazelrigg: "Yea" [sic]

Agent Tolsma also included in his affidavit the exchange where Oliver complained about that "stupid film container" and Hazelrigg replied that he didn't know anything about that and then asked, "was it coke?"

In addition to the recorded telephone conversation, Agent Tolsma included in his affidavit information from Oliver that Mr. Hazelrigg stored methamphetamine inside a silver metal thermos which is always located at Mr. Hazelrigg's residence. Agent Tolsma also swore that Oliver had indicated that Mr. Hazelrigg transported methamphetamine in his 1997 red Ford F150 pickup by placing the methamphetamine inside a small silver flashlight. Agent Tolsma indicated in his affidavit that Oliver's information was based upon his personal observation of Mr. Hazelrigg's use of these two devices to store and transport methamphetamine.

Agent Tolsma included in the affidavit his prior personal experience with Mr. Hazelrigg when Tolsma was a patrolman. Agent Tolsma indicated that Hazelrigg had been personally aggressive to Agent Tolsma in the past. He also indicated that Oliver had told Tolsma that Mr. Hazelrigg kept a sawed-off shotgun in his residence.

Agent Tolsma then swore that the SOI had told Agent Tolsma that Mr. Hazelrigg uses and deals methamphetamine. Agent Tolsma swore that the SOI was personally known to Agent Tolsma and had provided reliable information to Tolsma in the past. Agent Tolsma stated in the affidavit that the SOI was an adult that had been involved with narcotics in the past and appeared to be articulate and intelligent. No time frame was given as to the information relayed by the SOI. Also, no details of the SOI's statement were given other than that Mr. Hazelrigg used and dealt methamphetamine.

Agent Tolsma's affidavit also included generalizations about the way traffickers in illegal drugs conduct their affairs. He also included a statement that marijuana and other controlled substances remain in a user's body for a limited amount of time.

Exhibit 3 is the actual search warrant issued by the state court judge on November 19, 2007. It authorizes the search for: evidence of any controlled substance, paraphernalia used to ingest controlled substances, scales or containers used to package drugs, documents and computer records evidencing drug transactions and communications, currency related to drug distribution, evidence of residency and ownership of vehicles, visual records of drug activity, a cell phone, and a urine sample from Mr. Hazelrigg. The warrant authorized Agent Tolsma to search at 1311 Dyess Avenue in Rapid City, South Dakota, "along with all vehicles, trailers and outbuildings located

on the property." The warrant specifically authorized search of a 1997 red Ford F150 pickup with South Dakota license plates belonging to Mr. Hazelrigg.

On November 20, 2007, Agent Tolsma and other officers executed the search warrant. As an initial step, Agent Tolsma located Mr. Hazelrigg and his red pickup at Uncle Sam's Casino, a business in Rapid City, South Dakota. At the time they located Mr. Hazelrigg at this location, he was with another individual identified as Chris David Kujawa. Mr. Kujawa was driving Mr. Hazelrigg's vehicle. The officers conducted a search of both Mr. Hazelrigg and Mr. Kujawa prior to escorting the two men to Mr. Hazelrigg's residence to execute the search warrant there. Mr. Kujawa was found to have in his front pants pocket a small silver LED flashlight like the one described by Mr. Oliver. Contained within the flashlight were a small jeweler's bag with a white rock, a small jeweler's bag with a pink rock, and a small jeweler's bag with pink crystals.

A search of Mr. Hazelrigg's residence turned up a silver thermos which had inside it a plastic bag inside containing a pink crystal substance, a plastic bag containing a white crystal substance, one used bag with residue, and three unused zip-lock baggies. Other incriminating items were found in Mr. Hazelrigg's residence indicative of both drug use and drug distribution. Mr. Kujawa's vehicle was also located at Mr. Hazelrigg's house. Mr. Kujawa's vehicle, which bore Wyoming license plates, was also searched and

incriminating evidence was obtained therein. Urine samples were obtained from both Mr. Hazelrigg and Mr. Kujawa.

## DISCUSSION

Mr. Hazelrigg moves to suppress evidence and statements obtained by law enforcement during the execution of the above-described search warrant on November 20, 2007. Mr. Hazelrigg alleges that the evidence seized from his person, residence, and vehicle and statements made to law enforcement during the search should be suppressed as fruit of the poisonous tree. In support of his motion, Mr. Hazelrigg argues that the search warrant was defective and invalid because (1) the search warrant affidavit contained materially false statements about a conversation between Mr. Hazelrigg and Steve Oliver, (2) the affidavit contained stale and misleading statements about the source of information ("SOI"), and (3) the search warrant was overly broad in that it improperly authorized the seizure of a urine sample from Mr. Hazelrigg and the search of all vehicles, trailers, and outbuildings located on Mr. Hazelrigg's property.

The government maintains that the search warrant was valid in every respect. The government has represented to the court that Mr. Hazelrigg gave no incriminating statements that could be used against him at trial. Thus, the court need only address whether the physical evidence seized should be suppressed because of alleged defects in the search warrant.

**A.  Preliminary Showing for a <u>Franks</u> Hearing**

As a preliminary matter, a defendant is only entitled to a <u>Franks</u>[3] hearing if he makes a substantial showing that an affiant to a search warrant application knowingly or intentionally, or with reckless disregard for the truth, made false statements or omitted material facts and that the alleged statements were necessary to a finding of probable cause.  <u>Franks</u>, 438 U.S. at 155-56.  "Whether [the defendant] will prevail at that hearing is, of course, another issue."  <u>Id.</u> at 172.

The court finds that Mr. Hazelrigg is entitled to a <u>Franks</u> hearing.  The right under the Fourth Amendment to be free from unreasonable searches and seizures is a fundamental one and must be safeguarded from police overreaching.  The probable cause requirement for search warrants "would be reduced to a nullity" if a criminal defendant did not have recourse to a hearing before a reviewing judge to challenge the veracity of a search warrant affidavit. <u>Id.</u> at 168.  Because a pre-search proceeding is necessarily *ex parte* and is often done in haste, it "is likely to be less vigorous... [because] [t]he magistrate has no acquaintance with the information that may contradict the good faith and reasonable basis of the affiant's allegations."  <u>Id.</u> at 169.  Here, the court finds that Mr. Hazelrigg has the right to a <u>Franks</u> hearing based on his showing of alleged omissions and misrepresentations that Mr. Hazelrigg asserts are

---

[3]<u>Franks v. Delaware</u>, 438 U.S. 154 (1978).

contained in Agent Tolsma's affidavit.  Accordingly, the court allowed evidence

at the hearing as to the <u>Franks</u> issue and will now address the substance of

Mr. Hazelrigg's <u>Franks</u> argument.

**B.      Validity of the Search Warrant**

The Fourth Amendment requires that a search warrant be issued only

upon a showing of probable cause.  <u>United States v. Williams</u>, 477 F.3d 554,

557 (8th Cir. 2007).  Under <u>Franks</u>, in order to challenge a finding of probable

cause, a defendant must show, by a preponderance of the evidence, that (1) the

affiant, in preparing the search warrant affidavit, deliberately and knowingly,

or with reckless disregard for the truth, included falsehoods; and (2) the

affidavit lacks sufficient content to support a finding of probable cause if the

challenged information is set aside.  <u>Franks</u>, 438 U.S. at 171-72; <u>United States

v. Humphreys</u>, 982 F.3d 254, 259 n.2 (8th Cir. 1992).  The same analysis

applies to omissions of facts in that the defendant must show (1) that the

affiant intentionally or recklessly omitted material facts thereby making the

affidavit misleading; and (2) that the affidavit, if supplemented by the omitted

information, could not support a finding of probable cause.  <u>Humphreys</u>, 982

F.3d at 259 n.2.  The defendant's challenge must be more than conclusory and

must be supported by the evidence.  <u>Franks</u>, 438 U.S. at 171.  The defendant

must specify which parts of the affidavit are claimed to be false and must

provide a statement of supporting reasons or an "offer of proof."  <u>Id.</u>

"Allegations of negligence or innocent mistake are insufficient."  <u>Id.</u>  Finally, the

defendant may only challenge the veracity of the affiant's statements and not that of nongovernmental informants because a reviewing court is concerned only with whether the affiant knowingly and deliberately included falsehoods or recklessly omitted the truth.  Id.

A "reviewing court must accord substantial deference to the finding of an issuing judicial officer that probable cause exists."  United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993) (citing Illinois v. Gates, 462 U.S. 213, 236 (1983)).  Further, affidavits supporting search warrants are considered presumptively valid.  Franks, 438 U.S. at 171.  "Probable cause requires that the circumstances set forth in an affidavit supporting an application for a search warrant demonstrate a 'fair probability that contraband or evidence of a crime will be found in a particular place.' "  United States v. Tyler, 238 F.3d 1036, 1038 (8th Cir. 2001) (quoting Gates, 462 U.S. at 238)).  In determining whether probable cause exists, courts look to the totality of the circumstances and consider all the facts "for their cumulative meaning" rather than evaluating each fact independently.  Williams, 10 F.3d at 593; Tyler, 238 F.3d at 1038. "Applications and affidavits for issuance of a warrant should be examined under a common sense approach and not in a hypertechnical fashion." Williams, 10 F.3d at 593 (citing United States v. Ventresca, 380 U.S. 102, 109 (1965)).  The key question in determining whether a search warrant is supported by a finding of probable cause is whether, viewing all of the

information collected by law enforcement as a whole, a "reasonable person could suspect that a search would uncover evidence of crimes committed by [the defendant]." Tyler, 238 F.3d at 1038.

The Supreme Court summarized the probable cause standard as follows:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to insure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed.

Gates, 462 U.S. at 238-39 (citation omitted).

## 1.    Conversation between Oliver and Hazelrigg

Mr. Hazelrigg argues that Agent Tolsma provided a false statement to the court when he stated in his affidavit that Mr. Hazelrigg acknowledged giving Oliver the film cannister, wooden box (dugout) with one hitter pipe and a small amount of marijuana, and another small bag containing a white powder substance. Mr. Hazelrigg maintains that he never acknowledged or admitted to giving any item to Oliver. Mr. Hazelrigg also argues that, because Oliver only specifically referred to the film cannister in the conversation, Agent Tolsma falsely stated that Mr. Hazelrigg admitted to giving all of the above-mentioned items to Oliver.

In reviewing the transcript of the recorded conversation between Oliver and Mr. Hazelrigg, the court finds that Agent Tolsma did not knowingly or

intentionally, or with reckless disregard for the truth, make false statements or omit material facts in his affidavit. Agent Tolsma assumed that the "sh_t" referred to by Oliver were all of the items allegedly given to Oliver by Mr. Hazelrigg approximately a month earlier– the film cannister, wooden box (dugout) with one hitter pipe and a small amount of marijuana, and another small bag containing a white powder substance. Mr. Hazelrigg never denied knowledge of the items nor did he refute Oliver's assertion that Hazelrigg had given the items to Oliver. Furthermore, Agent Tolsma was very fair with the state court judge in that he reproduced the key parts of the conversation between Oliver and Hazelrigg, including exculpatory statements made by Hazelrigg denying knowledge of the film cannister and asking what it had in it.

The court finds Agent Tolsma's assumption that Hazelrigg's failure to deny or refute what Oliver said to him about the film cannister to be a logical inference that Hazelrigg was acknowledging the truth of what Oliver said. This is particularly true in the context of the entire conversation, in which Hazelrigg indicated to Oliver that they were arranging for a lawyer for Oliver. Friends usually don't pay for their friend's lawyers unless, as in the case with confederates in a drug conspiracy, the incarcerated friend is involved in a joint criminal enterprise with the friend who has his liberty and failure to remove the incarcerated person from jail endangers others in the enterprise.

Even if Agent Tolsma's conclusion was wrong, the fact that a conclusion is in error does not render it a deliberate falsehood. Any mistake Tolsma may have made in this regard would have been an understandable mistake, given the context of the conversation in which the statements were made. Furthermore, by reproducing for the state court judge in his affidavit the germane parts of the recorded conversation between Oliver and Hazelrigg, Agent Tolsma allowed the state court judge to reach his own conclusions about what was being discussed. Apparently, the state court judge agreed with Agent Tolsma's assessment of the conversation. A mistaken assumption will not support a <u>Franks</u> challenge to the validity of a search warrant. <u>See</u> <u>Franks</u>, 438 U.S. at 171 (a defendant challenging a search warrant affidavit must make more that mere allegations of negligence or innocent mistake).

The court also rejects Mr. Hazelrigg's arguments that he never admitted giving anything to Oliver and that Agent Tolsma lied in his affidavit by stating that Mr. Hazelrigg acknowledged giving the above items to Oliver. Oliver asked Mr. Hazelrigg if he remembered the day that Mr. Hazelrigg went to see the police about a building permit and asked Oliver to hold "that s__t." <u>See</u> Exhibit 1. Mr. Hazelrigg responded, "Yep...yeah," indicating that he remembered those events. <u>See id.</u> Agent Tolsma included an excerpt from this exchange in his affidavit. <u>See</u> Exhibit 1. Agent Tolsma also recited the events that occurred a month earlier: (1) the arrest of Oliver; (2) Oliver's claim that Mr. Hazelrigg had

given him the above items to store in his vehicle while Mr. Hazelrigg went to the

Rapid City Police Station to purchase a permit; and (3) Oliver's claim that

Mr. Hazelrigg had retrieved all the items except for the film cannister. Id. In

light of this history, the court cannot fault Agent Tolsma for concluding that

Mr. Hazelrigg acknowledged giving the above items to Oliver when he

responded "Yep...yeah."[4]  There simply is no false or reckless statement

regarding Agent Tolsma's knowledge that stemmed from Oliver.

## 2.     Source of Information

Mr. Hazelrigg also argues that Agent Tolsma failed to provide specific

facts to corroborate the SOI's statement that Mr. Hazelrigg deals and uses

methamphetamine.  Mr. Hazelrigg also objects to Agent Tolsma's

representation that the SOI was credible because Agent Tolsma did not provide

specific details proving the SOI's credibility.  Finally, Mr. Hazelrigg alleges that

---

[4]Mr. Hazelrigg claims that his affirmative response to Oliver's question
was aimed only at Oliver's first comment about Mr. Hazelrigg going to the
police for a building permit.  The transcript does not seem to support
Mr. Hazelrigg's claim.  Regardless, Agent Tolsma had no way of knowing of
Mr. Hazelrigg's intention.  Agent Tolsma logically assumed that Mr. Hazelrigg's
affirmative response applied to Oliver's entire question.  Federal Rule of
Evidence 801(d)(2)(B) defines as an "admission" statements which a party
manifests an adoption or belief in its truth.  Advisory committee notes provide
that "[u]nder established principles an admission may be made by adopting or
acquiescing in the statement of another. . . . When silence is relied upon, the
theory is that the person would, under the circumstances, protest the
statement made in his presence, if untrue."  See Fed. R. Evid. 801(d)(2)(B),
advisory committee notes.  Hence, while possibly mistaken, Agent Tolsma's
reliance on Mr. Hazelrigg's failure to protest Oliver's statement is reasonable.

the information provided by the SOI could be stale because there was no indication as to when such information was provided.

When search warrant affidavits are based upon information supplied by informants, the key question is whether such information is reliable. <u>Williams</u>, 10 F.3d at 593.

> Information may be sufficiently reliable to support a probable cause finding if the person providing the information has a track record of supplying reliable information, or if it is corroborated by independent evidence. If information from an informant is shown to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable and that therefore other information that the informant provides, though uncorroborated, is also reliable.

<u>Id.</u> (citing <u>Gates</u>, 462 U.S. at 233-34; <u>Draper v. United States</u>, 358 U.S. 307, 313 (1959)).

Thus, an informant is considered to be reliable and credible if the supplied information is at least partially corroborated by other sources. <u>Humphreys</u>, 982 F.2d at 259; <u>see also</u> <u>United States v. Murphy</u>, 69 F.3d 237, 240 (8th Cir. 1995) (court held that search warrant was based on probable cause when the affidavit contained only (1) the informant's statement that the defendant was a recently-released convicted murderer who possessed illegal firearms at his residence and (2) the affiant's statement that he had confirmed the defendant's address and release from prison). Probable cause may be found, for example, when the information supplied by one informant is consistent with specific details provided by a second, independent informant.

United States v. Fulgham, 143 F.3d 399, 401 (8ᵗʰ Cir. 1998).  Thus, reciprocal

corroboration may render informant information reliable and credible enough

to support a finding of probable cause.  Id.; United States v. Nieman, 520 F.3d

834, 839-840 (8ᵗʰ Cir. 2008).

Although the credibility and reliability of informants are important

considerations in the probable cause inquiry, "they are not 'separate and

independent requirements to be rigidly exacted in every case.' " Tyler, 238 F.3d

at 1039 (quoting Gates, 462 U.S. at 230)).  That is, an informant's statements

must be weighed within the totality of the circumstances.  Tyler, 238 F.3d at

1039.  In addition, probable cause may be established by the observations of

law enforcement and by circumstantial evidence.  United States v. Wells, 223

F.3d 835, 839 (8ᵗʰ Cir. 2000).  An important consideration in establishing the

credibility and reliability of an informant is whether law enforcement had the

opportunity to meet personally with the informant to assess his credibility and

whether the informant's information is based on first-hand knowledge rather

than rumor or innuendo.  Nieman, 520 F.3d at 839-840; see also Wells, 223

F.3d at 839 (court noted that police must engage in suitable corroboration of

the informant's information if the informant's reputation cannot be assessed

because the informant is anonymous); United States v. Robertson, 39 F.3d

891, 893 (8ᵗʰ Cir. 1994) (court noted that "there is an inherent indicia of

reliability in the richness and detail of first hand observation" by an informant

and that the ability of police to question the informant face-to-face gives greater

weight to the police's decision to rely on the informant's first-hand observations).

The Eighth Circuit addressed the issue of confidential informants in Tyler, 238 F.3d 1036. In Tyler, the defendant pled guilty to two counts of possession of crack cocaine with the intent to distribute after police executed a search warrant and found evidence of drugs. Id. at 1038. On appeal, the defendant argued that this evidence should have been suppressed because the underlying search warrant lacked probable cause. Id. The defendant specifically challenged the credibility and reliability of the information supplied to law enforcement by a drug-offender-turned-police-informant because the informant was not known previously to the police as a reliable source of information. Id.

The court rejected the defendant's argument, stating that the information supplied by the informant had been independently verified by the police, in part through a controlled buy of cocaine from the defendant. Id. at 1039. The court noted that it "strongly endorsed the use of corroboration as a method of confirming the reliability of the information given to police," and "[e]ven 'the corroboration of minor, innocent details can suffice to establish probable cause.'" Id. (quoting United States v. Ramos, 818 F.2d 1392, 1397 n. 7 (8th Cir. 1987)); cf Wells, 223 F.3d at 840.

The court also held that the informant's statements were presumptively credible because the statements were made against the informant's penal

interest.  Id.  The informant admitted to illegal activities (e.g., past narcotic purchases from the defendant) beyond that which the police already knew.  Id. Such statements against penal interest "typically 'carry considerable weight.' " Id. (quoting United States v. LaMorie, 100 F.3d 547, 553 (8th Cir. 1996)).

In Smith, a paid confidential informant made three controlled drug purchases from defendant while under police surveillance.  United States v. Smith, 266 F.3d 902, 904 (8th Cir. 2001).  State police officers applied for a search warrant and submitted an affidavit noting the three transactions and that the informant had provided reliable information to the police in the past. Id. at 904, 905.  The defendant argued that the search warrant was invalid in part because the affidavit contained a false statement regarding the use of the informant by the police in the past.  Id. at 905.  The court found that even if the affidavit for the search warrant contained knowingly false or misleading statements, the remaining content of the affidavit–the record of controlled drug purchases–was sufficient to establish probable cause.  Id.

In contrast, in Wells, the Eighth Circuit found that the search warrant affidavit did not support a finding of probable cause.  Wells, 223 F.3d at 839. Police received two anonymous tips from callers stating that they had *received* information that the defendant and two other men were responsible for two drive-by shootings.  Id. at 837.  However, only *one* of the anonymous callers stated the vehicle and weapons used in the shootings were hidden in the garage of a duplex rented by the defendant's girlfriend at a specified address.

Id.  A witness to one of the shootings also told police a dark-colored vehicle was seen leaving the area.  Id.  Police verified that the utilities for the duplex were in the name of the defendant's girlfriend, that the girlfriend was indeed the defendant's girlfriend, and that all three of the alleged shooters were associates of each other.  Id.  This information was included in the search warrant affidavit.  Id.

The affiant, Officer Lane, proceeded to the duplex where he observed the defendant washing a dark *blue Buick* Park Avenue automobile.  Id.  In the affidavit, Officer Lane stated that the defendant's vehicle matched the description given by the witness to one of the shootings, when in fact the witness had described the vehicle as a new *Lincoln* that was either dark *green or black* in color with tinted windows.  Id. at 837-838.   Based on this information, Officer Lane applied for and received a search warrant of the duplex where weapons were found, thus leading to the defendant's indictment.  Id. at 838.

The defendant moved to suppress the evidence seized from the duplex on the ground that the search warrant lacked probable cause.  Id.  At the suppression hearing, Officer Lane acknowledged the difference between the witness' description of the vehicle used in the shooting and the vehicle Officer Lane observed at the duplex.  Id.  The district court found that the affidavit's description of the vehicle was central to the conclusion that the vehicle used in the shootings matched that seen in front of the duplex.  Id.  The court found

that this misstatement or omission misled the judge who issued the search warrant and that "a properly reconstructed warrant lacked sufficient information to support a finding of probable cause that evidence of the shootings would be found at [the duplex]." Id. The court concluded that the defendant had established a Franks violation and that the evidence seized from the duplex should be suppressed. Id.

The government appealed to the Eighth Circuit, but only as to the district court's determination that a properly reconstructed search warrant lacked sufficient information to support a finding of probable cause. Id. at 839. The Eighth Circuit upheld the district court's ruling, finding that the police failed to properly corroborate information provided by the anonymous callers. Id. The court explained as follows:

> When suspicions arise not from any observations of police officers "but solely from a call made from an unknown location by an unknown caller," whose reputation cannot be assessed, the police must engage in suitable corroboration of the alleged criminal activity. Suitable corroboration must exhibit sufficient indicia of reliability in order for an anonymous tip to provide either a reasonable suspicion of criminal activity or probable cause to arrest or to search.

Id.

In determining that the search warrant lacked probable cause, the court found the following facts persuasive: (1) the callers remained anonymous and unknown to the police; (2) the callers stated that they received information regarding the defendant, thus, the callers "did not report any first-hand

24

information or intimate details that could provide a reliable basis for this purported knowledge"; (3) the police were only able to corroborate innocent details of the location of the duplex, the alleged shooters' association with each other, and the relationship between the defendant and his girlfriend; and (4) the police failed to corroborate any allegation of criminal conduct by the defendant or any allegation of criminal activity at the duplex. Id. at 839-40. The court found that the link between the shootings and the duplex was missing if the vehicle description was set aside because only one anonymous caller stated that the vehicle used in the shooting was located at the duplex. Id. Without corroboration from another source–the witness or another informant–the information provided by only one of the anonymous callers was insufficient to establish probable cause. Id. at 840. Thus, the court upheld the district court's suppression of the evidence seized from the duplex. Id.

The court finds that the information provided by Oliver and the SOI in this case–as related in Agent Tolsma's affidavit–was sufficiently reliable to support the court's probable cause determination. Where probable cause for a search warrant is challenged, the court must make the probable cause determination based on "only that information which is found within the four corners of the affidavit" in support of the search warrant application. United States v. Hudspeth, 525 F.3d 667, 674 (8th Cir. 2008) (quoting United States v. Olvey, 437 F.3d 804, 807 (8th Cir. 2006)). "The affidavit for a search warrant

should be examined using a common sense approach, and not a hypertechnical one." Id.

The credibility of both Oliver and the SOI are enhanced by the fact that they were identified sources rather than anonymous callers. Nieman, 520 F.3d at 839-840; Wells, 223 F.3d at 839; Robertson, 39 F.3d at 893. In his affidavit, Agent Tolsma stated that the SOI was an adult who had been involved with narcotics in the past, was articulate and intelligent, and was personally know to Agent Tolsma. See Exhibit 2. Agent Tolsma stated that the SOI had provided reliable, credible information in the past and that such information had led to the arrest of a suspect. Id. The SOI's statement that Mr. Hazelrigg used and dealt methamphetamine was corroborated by the information provided by Oliver, as follows:

> Oliver has told me that Hazelrigg stores his methamphetamine inside a silver metal thermos which is always stored at Hazelrigg's residence. Oliver also said that Hazelrigg transports the methamphetamine inside a small silver flashlight when traveling in a vehicle, specifically a 1997 red Ford F150 pickup bearing SD license plates 49NV60. Oliver bases this information on personal observation as recent as one month ago. Oliver said that since he has known Hazelrigg he has always utilized the above receptacles for storing and transporting the methamphetamine.

Id.

The information provided by Oliver was detailed, recent, and came from first-hand knowledge rather than rumor or innuendo. See Robertson, 39 F.3d at 893 (court noted that "there is an inherent indicia of reliability in the richness and detail of first hand observation" by an informant). Although

Agent Tolsma did not name the SOI or state when the SOI provided the information regarding Mr. Hazelrigg, the SOI's statement was corroborated by Oliver's statements regarding Mr. Hazelrigg's habits.[5] See <u>Fulgham</u>, 143 F.3d at 401 (reciprocal corroboration may render information from two informants reliable and credible enough to support a finding of probable cause). Relayed independently of each other, the SOI's statement was also corroborated by Oliver's statement that Mr. Hazelrigg had given him a film cannister with residue that tested positive for methamphetamine, a wooden box (dugout) with one hitter pipe and a small amount of marijuana, and another small bag containing a white powder substance. Thus, even if the information from the SOI was stale, it was corroborated by information from Oliver of the same type of activity on Mr. Hazelrigg's part that was clearly not stale.

Finally, Agent Tolsma indicated that he knew Mr. Hazelrigg personally as he had arrested him several years ago for marijuana found in his vehicle. Although this information is stale with respect to this search warrant, it does support the information from both SOI and Oliver that Mr. Hazelrigg was a drug user. Agent Tolsma indicated in his affidavit that, in his experience and

---

[5]Had Agent Tolsma included the fact that the most recent information received from the SOI regarding Mr. Hazelrigg was approximately one week to ten days prior to the application for the search warrant, this would conclusively show that the information from the SOI was not stale. However, this court can only consider the information in the four corners of Tolsma's affidavit. Thus, since no time frame is given in that affidavit for the receipt of the information from the SOI, it leaves open the possibility that the information was stale.

training in drug investigations, individuals who possess and/or distribute marijuana often possess and/or distribute methamphetamine. Mr. Hazelrigg's question, "Was it Coke?", in response to Oliver's comment about the film cannister also supports the SOI's assertion that Mr. Hazelrigg was involved with illegal narcotics.

In light of the totality of the circumstances, the court finds that Agent Tolsma's omission concerning when the SOI provided information and what specific facts formed the basis for the SOI's statement were not crucial to the determination of probable cause. See Flagg, 919 F.2d at 501. The SOI's statement that Mr. Hazelrigg used and dealt methamphetamine was corroborated by Oliver's statements that Mr. Hazelrigg stores and transports methamphetamine and by Mr. Hazelrigg's seeming acknowledgment that he did give Oliver drugs and drug paraphernalia to store. In light of this information, there were sufficient reliable facts from which the court could find that there was a 'fair probability that contraband or evidence of a crime [would] be found" in Mr. Hazelrigg's residence and vehicle. Tyler, 238 F.3d at 1038 (quoting Gates, 462 U.S. at 238).

### 3.    Overbreadth

Finally, Mr. Hazelrigg claims that the search warrant was invalid because it improperly authorized the search of all vehicles, trailers, and outbuildings located on Mr. Hazelrigg's property and the taking of a urine sample from

Mr. Hazzelrigg. Mr. Hazelrigg argues that the facts alleged by Agent Tolsma would only support the search of Mr. Hazelrigg's 1997 Ford pickup and his residence. Mr. Hazelrigg argues that the evidence seized from areas other than Mr. Hazelrigg's residence and Ford pickup should be suppressed.

The concept of overbreadth as it relates to warrants is defined as follows:

> The Warrant Clause of the Fourth Amendment categorically prohibits the issuance of any warrant except for one particularly describing the place to be searched and the persons or things to be seized. A warrant that fails in this particularity requirement is invalid and evidence seized for no reason other than reliance on invalid portions of a warrant must be suppressed. However, where the warrant is invalid in part, the warrant is severable, and items seized pursuant to valid portions of the warrant need not be suppressed.

United States v. Timley, 443 F.3d 615, 622 (8th Cir. 2006) (internal quotation marks and citations omitted).

The court finds that there was probable cause to support the court's authorization of the taking of a urine sample from Mr. Hazelrigg. The SOI indicated that Mr. Hazelrigg used methamphetamine. Oliver claimed that Mr. Hazelrigg gave him a film cannister with residue that tested positive for methamphetamine, a wooden box (dugout) with one hitter pipe and a small amount of marijuana, and another small bag containing a white powder substance–all of which point to the use of drugs. Mr. Hazelrigg seemingly acknowledged giving these items to Oliver. Agent Tolsma indicated that, years earlier, he had arrested Mr. Hazelrigg for possession of marijuana. All of this information taken together would support the inference that Mr. Hazelrigg was

29

a user of narcotic substances, thus providing probable cause that evidence of his drug use would be found in his urine.

The court also finds that the search of the outbuildings, trailers, and other vehicles belonging to Mr. Hazelrigg, as authorized by the search warrant, was proper. "When a warrant specifically mentions certain structures, it authorizes a search of these structures and, by implication, any other vehicles, structures, or property not noticeably separate from them." United States v. Pennington, 287 F.3d 739, 744-45 (8th Cir. 2002) (additional citation and internal quotation marks omitted). Further, "a vehicle found at the premises (except, for example, the vehicle of a guest or other caller) is considered to be included within the scope of a warrant authorizing a search of that premises." Id. (additional citation and internal quotation marks omitted).[6]

_____

[6]Because Mr. Hazelrigg moves to suppress only "evidence taken from *his* person and property as a result of the search warrant," see Docket No. 37at 1 (emphasis supplied), the court does not address the legality of the seizure of evidence from Mr. Kujawa and his vehicle, which was located at Mr. Hazelrigg's residence and was also searched pursuant to the warrant. Assuming Mr. Hazelrigg had standing to challenge these seizures, the court notes that, as to the search and seizure of Mr. Kujawa's person, the Eighth Circuit has approved searches of persons present at the scene of the execution of a search warrant. See United States v. Johnson, 528 F.3d 575, 579-580 (8th Cir. 2008) (citing Michigan v. Summers, 452 U.S. 692, 698-700 (1981), and Terry v. Ohio, 392 U.S. 1 (1968) (upholding search of resident's pocket pursuant to Terry while officers executed a search warrant in the home). The search of Mr. Kujawa's vehicle would appear to be more problematic because the Wyoming license plates on that vehicle clearly distinguished it from Mr. Hazelrigg's vehicle, which bore South Dakota plates. The Eighth Circuit has held that a search warrant does not cover the vehicle of a guest or other caller. Pennington, 287 F.3d at 744-745. However, the discovery of the methamphetamine on Mr. Kujawa's person while he was in the company of

In light of the strong presumption that search warrant affidavits are valid, the court finds that Mr. Hazelrigg has not satisfied his burden under <u>Franks</u> or otherwise to show that the search warrant in this case was not supported by probable cause or that it was overbroad.  <u>See</u> <u>Franks</u>, 438 U.S. at 171.  Examining the totality of the circumstances under a common-sense approach, the court finds that the search warrant in this case was valid, the search of Mr. Hazelrigg's person and property was proper, and the evidence seized should not be suppressed based on an allegation that the search warrant was invalid.  <u>See</u> <u>Williams</u>, 10 F.3d at 593.

## CONCLUSION

Based on the evidence adduced at the hearing, the above findings of fact, and the law, the court recommends that Kent Hazelrigg's motion to suppress [Docket 37] be denied.

## NOTICE TO PARTIES

The parties have ten (10) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Objections must be timely and specific in order to require *de novo* review by the

---

Mr. Hazelrigg is a fact that ties Mr. Kujawa to the illegal activity for which there was probable cause at Mr. Hazelrigg's residence and perhaps distinguishes this case from <u>Pennington</u>.

district court.  See <u>Thompson v. Nix</u>, 897 F.2d 356 (8th Cir. 1990); <u>Nash v.</u>

<u>Black</u>, 781 F.2d 665 (8th Cir. 1986).

Dated February 2, 2009.

BY THE COURT:

/s/ *Veronica L. Duffy*

VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE