UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| UNITED STATES OF AMERICA, | ) | CR. 08-50047-RHB |
| --- | --- | --- |
| Plaintiff, | ) | |
| vs. | ) | **ORDER ADOPTING** |
| | ) | **MAGISTRATE JUDGE'S** |
| KENT HAZELRIGG, | ) | **RECOMMENDATIONS** |
| Defendant. | ) | |

Defendant, Kent Hazelrigg (Hazelrigg), is charged with one count of conspiracy to distribute a controlled substance and one count of possession with intent to distribute a controlled substance. On December 23, 2008, Hazelrigg moved to suppress the evidence seized during the execution of a search warrant on November 20, 2007. An evidentiary hearing was held on February 2, 2009, before the magistrate judge. The magistrate judge made findings of fact and recommended that the Court deny Hazelrigg's motion to suppress. Hazelrigg objects to this recommendation.

## STANDARD OF REVIEW

The Court must make a de novo review "of those portions of the [magistrate judge's] report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); see also Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

# FACTS

Lyle Tolsma, an agent with the South Dakota Department of Criminal Investigation, had been working with a source of information ("SOI") whose identity was known to Tolsma. Tolsma and the SOI had met approximately twelve times over the course of two years, and the SOI's information throughout that time had been confirmed by Tolsma and had led to several prosecutions for drug trafficking crimes.

In early November 2007, the SOI told Tolsma that he/she personally witnessed Hazelrigg receive large quantities of methamphetamine, possess drug paraphernelia, and use controlled substances. The SOI also described Hazelrigg's residence.

A few weeks earlier, in October 2007, Steve Oliver was arrested for theft, and a search of his vehicle yielded a film cannister which contained methamphetamine residue. Tolsma and DCI Agent Gobel spoke with Oliver at his request at the Pennington County Jail. Oliver told the agents that Hazelrigg asked Oliver to hold several items for him while he completed some paperwork at the Rapid City Police Department. Oliver agreed, and the items were placed in his vehicle. Those items included a wooden device for holding and smoking marijuana, a bag containing white powder residue, and the film cannister for which Oliver was arrested. Oliver said that Hazelrigg had later removed the items, except for the film cannister.

At the end of the conversation, Oliver agreed to place a recorded phone call to Hazelrigg. On November 19, 2007, at 10:50 a.m., Oliver called Hazelrigg, and a recording was made. Oliver told Hazelrigg that the police found the film cannister in his truck and tested it for drugs. He asked Hazelrigg to remember the day he went to the police department, when Hazelrigg "had me hold that shit," to which Hazelrigg replied, "Yep ... yeah." Oliver also said, "You put me kinda in a tough spot, I was scared." Hazelrigg replied, "Was it Coke?" After the phone call, Tolsma verified Hazelrigg's address as the one provided by Oliver and his SOI.

In addition to the above information, Tolsma had encountered Hazelrigg two times previously when Tolsma was a South Dakota highway patrol officer. In 1995 or 1996, Tolsma discovered marijuana on Hazelrigg's person in the course of a traffic stop. Then, sometime between 1996 and 2003, Tolsma once again stopped Hazelrigg for speeding and driving under the influence. Finally, Hazelrigg's name was mentioned during several DCI debriefings with other individuals.

On November 19, 2007, Tolsma swore out an affidavit to the Seventh Judicial Circuit Court seeking a search warrant of Hazelrigg's residence, outbuildings, and vehicles. See Docket 37-2, page 4-8 (Tolsma's affidavit). The affidavit described Hazelrigg's home and vehicle, and it includes details about Tolsma's interview with Oliver, including his statement that Hazelrigg possessed methamphetamine, and about

3

the recorded phone call between Oliver and Hazelrigg. Tolsma recounted Oliver's statements that Hazelrigg kept his methamphetamine in a silver metal thermos at his residence and that he transported methamphetamine in a silver flashlight. With regard to information from Tolsma's SOI, the affidavit stated that the SOI was an adult who had provided reliable information to Tolsma in the past, and that the SOI had told Tolsma that Hazelrigg uses and deals methamphetamine.

The state court issued the search warrant, which authorized a search for evidence of a controlled substance, drug paraphernalia, scales or containers, relevant documents, currency related to drug distribution, evidence of residency and vehicle ownership, cell phones, and a urine sample from Hazelrigg, and authorized a search of Hazelrigg's home, outbuildings, and vehicles. The search warrant was executed on November 20, 2007. On that date, Tolsma located Hazelrigg and his pickup at a business in Rapid City, where the officers searched Hazelrigg and his companion, Chris Kujawa, and found a small silver flashlight in Kujawa's pocket which contained rocks and crystals in small jeweler's bags. Law enforcement escorted both men to Hazelrigg's home, where law enforcement conducted a search and found crystal substances and residue, along with other items indicative of drug use and distribution. Kujawa's car at the residence was also searched, yielding incriminating evidence. Hazelrigg seeks to suppress all of this evidence seized on November 20, 2007.

## DISCUSSION

Defendant contends that the evidence should be suppressed because the search warrant was defective and invalid. Defendant first objects to the magistrate judge's factual conclusions regarding the allegations in the affidavit as well as the legal conclusion that there was probable cause to issue the search warrant. The Eighth Circuit has stated that "[p]robable cause requires that the circumstances set forth in an affidavit supporting an application for a search warrant demonstrate 'a fair probability that contraband or evidence of a crime will be found in a particular place.' " United States v. Tyler, 238 F.3d 1036, 1038 (8th Cir. 2001) (citing Illinois v. Gates, 462 U.S. 213, 238, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983)). In determining the existence of probable cause, courts are to "consider all of the facts for their cumulative meaning." Id. Furthermore, applications for search warrants are to be "examined under a common sense approach and not in a hypertechnical fashion." Williams, 10 F.3d at 593. Finally, a Court reviewing another court's issuance of a warrant "is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing] that probable cause existed." Gates, 462 U.S. at 238-39. A reviewing court "must accord substantial deference to the finding of an issuing judicial officer that probable cause exists." Williams, 10 F.3d at 593 (citing Gates, 462 U.S. at 236).

Viewing the facts offered in the affidavit using a "common sense approach" and "not in a hypertechnical fashion," and examining the totality of the circumstances relayed in the affidavit, the Court concludes that "a reasonable person could suspect that a search would uncover evidence of crimes" committed by Hazelrigg. See Tyler, 238 F.3d at 1038. The affidavit contains statements to law enforcement from two individuals, Oliver and the SOI, that Hazelrigg possessed drugs. Both Oliver and the SOI were identified individuals, not anonymous sources, who shared information which was based on their personal observations. United States v. Nieman, 520 F.3d 834, 840 (8th Cir. 2008) (upholding search warrant when officers "had spoken with the informants directly and were able to assess their credibility," where their statements were based on their personal observations, and where statements were corroborated by other informants); Williams, 10 F.3d at 594; cf. United States v. Wells, 223 F.3d 835, 839-40 (8th Cir. 2000). Additionally, the SOI had provided reliable information in the past. United States v. Fulgham, 143 F.3d 399, 401 (8th Cir. 1998). Furthermore, the reliability of the information provided by Oliver and the SOI was bolstered by the fact that it was mutually reinforcing. See Nieman, 520 F.3d at 840; Fulgham, 143 F.3d at 401 (stating that two informants' tips were "reciprocally corroborative, rendering their information enough to support a finding of probable cause"). The magistrate judge's reliance on the statements given to Tolsma by the SOI and Oliver was not improper.

Hazelrigg also argues that the information provided by Oliver was "stale" in that it was over a month old, and that this staleness renders the information unreliable in making a probable cause determination. The Court disagrees. The Eighth Circuit has said that "[t]here is no bright-line test for determining when information is stale . . . and the vitality of probable cause cannot be quantified by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit." Tyler, 238 F.3d at 1039 (citing United States v. Koelling, 92 F.2d 817, 822 (8th Cir. 1993)). Oliver told Tolsma that he had observed Hazelrigg in possession of methamphetamine at his residence and in his vehicle "as recent as one month ago." Docket 37-2, page 6. Such information is "sufficiently timely," and the magistrate judge properly relied upon the information in the finding of probable cause. See Koelling, 92 F.3d at 822.

Hazelrigg also argues that the affidavit contained a material false statement made knowingly and intentionally, with reckless disregard of the truth, and that these false statements were necessary to the finding of probable cause. This alleged "false statement" is Tolsma's characterization of the "gist" of the phone call as one where "Hazelrigg acknowledged giving the aforementioned items to Oliver." Docket 37-2, page 6. If a search warrant is issued based on an affidavit containing "false statements made knowingly and intentionally or with reckless disregard for the truth," the warrant

7

is invalid "unless probable cause exists when the affidavit is properly reconstructed with truthful information." Wells, 223 F.3d at 839.

Reviewing the transcript of the phone conversation, the Court finds that Tolsma's characterization of the conversation as one where Hazelrigg "acknowledged giving the aforementioned items to Oliver" is not a false statement made knowingly and intentionally, or without disregard for the truth. During the conversation, Oliver reminded Hazelrigg about the day he went to see "about the building permit and had me hold that shit," to which Hazelrigg replied "Yep .... yeah." Docket 37-2, page 1. When Oliver specifically mentioned the film container later, it is clear that Hazelrigg knew what he was talking about, even though he disputes whether or not the container was the reason Oliver was in trouble. Id. at 2. Additionally, when Oliver stated, "You put me kinda in a tough spot," Hazelrigg does not deny it but instead asks, "Was it Coke?" Even though Tolsma did not specifically recount all of these details of the Oliver/Hazelrigg conversation in the affidavit, the Court does not believe that Tolsma's statement in the affidavit that Hazelrigg admitted giving the film cannister and other items to Oliver is either "false" or "misleading" or made with "reckless disregard" for the truth. See Wells, 223 F.3d at 838-39. Therefore, the magistrate judge properly relied on them in making his probable cause determination.

8

Next, Hazelrigg challenges the staleness of the SOI's information, the lack of detail with regard to the SOI's information, the staleness of Tolsma's conclusions that the SOI is credible, and the staleness of Tolsma's statements about his previous arrest of Hazelrigg "several years ago" when Tolsma was a state trooper. With regard to the affidavit's comments about the SOI, it stated that the SOI related that Hazelrigg "deals and uses methamphetamine." The affidavit went on to state that the SOI: "has provided reliable information to me in the past. The information provided by the SOI regarding narcotics information was credible and resulted in the arrest of a suspect. This SOI is personally known to me and has given me no indications that are inconsistent with any information currently or previously provided." Docket 37-2, page 6. The affidavit did not provide any timeframe with regard to the SOI.

As stated above, there is not a bright-line rule with regard to staleness. Considering the totality of the circumstances, the Court concludes that the affidavit's content with regard to the SOI was not rendered unreliable due to staleness. The SOI's allegations that Hazelrigg used and dealt methamphetamine related to what often is a continuing crime, not a one-time occurrence like the crime of assault. See Nieman, 520 F.3d at 839 (stating that the court is to "consider the nature of the crime being investigated"); see also Tyler, 238 F.3d at 1039 (drug trafficking case). Furthermore, the Court agrees that even if the information from the SOI was stale, it was corroborated by

Oliver's statements which were much more timely, supporting the inference that Hazelrigg was often in possession of methamphetamine, possibly for the purpose of distributing it. The court believes that it is not unreasonable for the magistrate judge to rely on information provided by the SOI in finding probable cause, even if that information may relate to events significantly prior to the issuance of the search warrant, especially since that information was supported by the information obtained by Oliver. See Tyler, 238 F.3d at 1039. Finally, with regard to the lack of detail provided about the SOI's information and history as an informant, the Court does not believe that the absence of such detail damages the affidavit or the search warrant. As stated above, in evaluating the information provided by an informant, a court is to examine "if the informant has provided reliable information in the past or if details from the informant are independently corroborated." United States v. Harris, 557 F.3d 938, 940 (8th Cir. 2009). Here, Tolsma stated that the informant had proven reliable in the past and that information from the SOI had led to one arrest – facts which Hazelrigg does not dispute. Additionally, the information provided by the SOI was corroborated by Oliver's statements. More detail about Tolsma's previous encounters with the SOI is simply not required.

With regard to the affidavit's statements regarding Tolsma's previous encounter with Hazelrigg, the affidavit described Tolsma's arrest of Hazelrigg for marijuana

possession as occurring "several years ago." Docket 37-2, page 6. As stated above, the test for staleness is not a "bright-line" determination. Tyler, 238 F.3d at 1039. The Court doubts that the magistrate judge relied upon such a statement in his finding of probable cause, given the totality of the information provided in the search warrant and the tenuous connection between Tolsma's encounter with Hazelrigg many years earlier and the rest of the information related to the magistrate judge in the affidavit. Regardless, as the Court finds that the search warrant was valid, the inclusion of this surplusage does not alter the Court's conclusion that the magistrate judge made a proper finding of probable cause.

For all of these reasons, the Court finds that the search warrant was supported by probable cause and was, therefore, valid.

Finally, Hazelrigg objects to the scope of the search warrant as including all vehicles and outbuildings on Hazelrigg's property as well as a urine sample from Hazelrigg. Under the fourth amendment, " a search warrant must be sufficiently definite to allow the police to identify the property authorized to be seized with some particularity." Tyler, 238 F.3d at 1039. Viewing the totality of the circumstances offered in the affidavit, the Court affirms the scope of the search warrant. Oliver stated that Hazelrigg kept drugs in his home and in his car. The SOI told Tolsma that Hazelrigg uses and deals methamphetamine. This information, when considered with the

11

common sense of this Court that individuals possessing and/or dealing drugs tend to hide their contraband in a variety of locations, as the affidavit alleges, leads the Court to conclude that the scope of the search warrant is proper. See United States v. Pennington, 287 F.3d 739, 744 (8th Cir. 2002); United States v. Watkins, 113 Fed.Appx. 720 (8th Cir. 2004) (judgment vacated on other grounds).

For the reasons stated above, it is hereby

ORDERED that defendant's objections to the magistrate judge's findings and recommendations (Docket #50) are overruled.

IT IS FURTHER ORDERED that the findings and recommendations of the magistrate judge (Docket #47) are adopted.

Dated: May 6th, 2009.

BY THE COURT:

RICHARD H. BATTEY
UNITED STATES DISTRICT JUDGE